UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

MENADA, INC.,

    Plaintiff,                                                  CASE NO. 1:17-cv-22183

v.

THE HARTFORD STEAM BOILER INSPECTION AND INSURANCE COMPANY,

    Defendant.
_____/

**MENADA, INC.'S MOTION FOR REMAND
AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

    Defendant, Menada, Inc. ("**Menada**") hereby files its Motion for Remand, pursuant to 28 U.S.C. §§ 1332(c) and 1441(c), and respectfully requests that this Court enter and Order remanding this case back to the Circuit Court for the 11th Judicial Circuit in and for Miami-Dade County, Florida. In support thereof, Menada states as follows:

**FACTUAL AND PROCEDURAL BACKGROUND**

**The Policy Begins…**

    Defendant, The Hartford Steam Boiler Inspection and Insurance Company ("**Hartford**") issued that certain Insuring Agreement (the "**Policy**"), bearing policy number FPB2279093, effective for the period of May 15, 2016 through May 15, 2017. The Policy covered, *inter alia*, the property owned by Menada and located 5101 Collins Avenue, Miami Beach, Florida, and the equipment located thereon. The Menada property is equipped with an HVAC system that utilizes two McQuay 260 ton chillers in order to maintain a comfortable temperature for its patrons at all times.

### …And Then So Does Reality

On or about October 17, 2016, Menada discovered that one of its McQuay 260 ton HVAC chillers was not functioning properly. Menada immediately retained Machin Mechanical Services and Controls (**"MMSC"**) to inspect and repair the chiller. Upon inspection, MMSC determined that a four-way oil valve failed, causing all of the oil to leak out of the chiller unit.

As a result, metal components of the chiller were allowed to grind against each other, ultimately contaminating the entire system with metal shavings, while other mechanical components began to rapidly deteriorate under the pressure. Menada timely notified Hartford of the damages and opened a claim pursuant to the terms and conditions of the Policy.

### Menada Files Its Claim, and Hartford Emulates the Ostrich

In response, Hartford assigned the claim to its representative, Brad Fulmer, to investigate and adjust the claim. Hartford also retained ChillCo, Inc. (**"ChillCo"**) to inspect the insured chiller. Hartford retained ChillCo from its preferred vendor list, instead of retaining an independent and objective HVAC expert to provide thorough and complete opinions and conclusions with respect to the status of the insured chiller.

Hartford's retention of ChillCo is tantamount to retaining a "hired gun" to provide Hartford with a self-serving and outcome-oriented investigation and opinions to deny Menada's claim, and/or reduce the amount of the pay-out with respect to Menada's claim. On or about November 8, 2016, Menada – in an effort to concentrate on business operations – retained the services of an insurance claim professional, Vincent LoBracco of Coast to Coast Claims Consultants, Inc., to assist with the pursuit of Menada's claim and rightfully owed insurance benefits, which to date, have been denied to Menada.

On December 15, 2016, in response to Menada's preliminary Statement of Loss, Hartford advised Menada that ChillCo had determined the chiller could be repaired and returned to reliable service for $106,500.00, and provided Menada with a copy of ChillCo's December 13, 2016, recommendation and estimate.

Hartford completely disregarded the recommendations of Menada's HVAC contractor, MMSC, to replace the damaged chiller. Hartford also failed to advise Menada that its HVAC "expert" ChillCo was not a licensed contractor in Florida. ChillCo's estimate states that the "cost estimates are based on a local company performing the scope of work," but failed to identify the "local company," or disclose if the additional costs associated with retaining a Florida contractor to perform the repairs were included. Further, ChillCo's estimate fails to disclose any warranty that would guarantee that the chiller was "returned to reliable service" following repair instead of replacement.

### More Bad Faith

On December 15, 2016, Menada's representative advised Hartford that Menada disagreed with ChillCo's assertion that the chiller could simply be repaired. Menada could not provide Hartford with a "written repair estimate with scope of work" as requested by Hartford, ***because the chiller could not be repaired***. Further, Menada requested that Hartford provide the name of the "local company" used by ChillCo to prepare its cost estimate.

On December 19, 2016, Hartford advised Menada's representative, Vincent LoBracco, that the claim had been reassigned to David Ashley. Hartford confirmed that an equipment breakdown occurred with the chiller when the impeller in the compressor came in contact with the compressor housing and as such, the damage was limited to the compressor. Hartford further confirmed that

the repair estimate was prepared by ChillCo and not a bid obtained from any other contractor, which was in direct contradiction of the statement on ChillCo's December 13, 2016, estimate.

Hartford then advised that a separate repair vendor would be retained to determine the extent of damage to the chiller and provide an independent repair estimate. In its December 19, 2016, correspondence, Hartford attempted to concoct a coverage defense by questioning if Menada had mitigated its damages by protecting the internal surfaces of the chiller from corrosion while the claim was being adjusted. Hartford failed to acknowledge that the internal surfaces of the chiller had been exposed so that Hartford's representatives could inspect the damages.

Menada's HVAC contractor had determined the chiller was a total loss and recommended replacement of the unit, thus, there was no reason to "protect" the internal surfaces. Hartford failed to even notify Menada that its expert determined the chiller could be repaired until its December 15, 2016, correspondence. On or about December 19, 2016, Hartford attempted to tender insurance benefits to Menada in the amount of $77,744.00, after reduction for depreciation and the policy deductible. Hartford failed and/or refused to acknowledge the $9,511.04 in out-of-pocket expenses already incurred by Menada in its efforts to mitigate the damages to the chiller.

To date, Hartford has not sent a "separate repair vendor" to inspect the damages to the chiller, as advised in its letter of December 19, 2016. Hartford admitted that Menada sustained covered damages as a result of the chiller breakdown that occurred on or about October 17, 2016, but has denied tendering all owed insurance benefits to Menada, and has refused to acknowledge MMSC's recommendation (as a Florida-licensed HVAC expert) that the chiller is irreparably damaged and must therefore be replaced.

Hartford has failed and/or refused to settle the claim when it could and should have done

so had it acted fairly and honestly towards Menada, and has failed to take into account the information and evidence provided that contradict its decisions with respect to the claim and the damaged chiller. Even upon receipt of additional and supporting evidence to the contrary, Hartford has continued to stand by its partial claim denial and refuses to allow for replacement of the chiller.

Hartford's conduct in refusing to replace the chiller in spite of all of the foregoing evidence and allegations has been unfair, wanton, and reckless, and has caused and continues to cause additional damages to Menada. This is evidenced by the fact that Menada's second HVAC chiller has now suffered damage as a result of the overuse, additional strain and wear and tear on the second chiller which is directly and proximately caused by Hartford's failure to evaluate the claim in total, putting Menada at risk for future loss of business income.

To date, Hartford has failed and/or refused to provide Menada with all the insurance benefits due and owing under the Policy, and has not tendered the full amount needed to replace the damaged chiller despite knowing that the chiller has sustained irreparable damages. Thus, HSB has wrongfully denied coverage.

In light of the foregoing, Menada filed its Complaint against Hartford in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, bearing Case No. 2017-012633-CA-23. (the **"State Court Litigation"**) on May 25, 2017. A true and correct copy of Menada's Complaint which initiated the State Court Litigation is attached to Hartford's Notice of Removal (defined below) as Exhibit "A." In response, on June 9, 2017, Hartford improperly filed its *Petition for Removal* (ECF No. 1) (the **"Notice of Removal"**), in an attempt to create federal court jurisdiction where it does not exist.

Menada's well pled Complaint in the State Court Litigation asserts claims against Hartford for (i) breach of insurance contract, (ii) breach of implied covenant of good faith and fair dealing; (iii) unjust enrichment, (iv) statutory bad faith, (v) fraud in the inducement, (vi) negligent misrepresentation, and (vii) fraudulent misrepresentation.  All of the claims asserted against Hartford in the State Court Litigation arise out of the same nucleus of operative fact – the Insurance Agreement between Hartford and Menada – as the Complaint at issue in the instant case.

For the reasons set forth below, Menada respectfully requests that the Court remand this matter to the Circuit Court for the 11th Judicial Circuit in and for Miami-Dade County, Florida for an adjudication on the merits.

## THE HIGH LEGAL STANDARD FOR REMOVAL

"Federal courts are courts of limited jurisdiction, which only possess power that is authorized by the Constitution and by statutes." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994).  There is a presumption that a case lies outside this limitation and the burden of establishing the contrary rests on the party asserting jurisdiction. *Id*.  A federal district court **_must_** remand to the state court any case that was removed improvidently or without the necessary jurisdiction. *Miedema v. Maytag Corporation*, 450 F.3d 1322, 1330 (11th Cir. 2006); *Lowery v Alabama Power Company*, 483 F.3d 1184, 1207 (11th Cir. 2007). Accordingly, a removal notice should be strictly construed against removal and all doubts should be resolved in favor of remand. *Shamrock Oil & Gas v. Sheets*, 331 U.S. 100 (1941); *Butler v. Polk*, 592 F.2d. 1293 (5th Cir. 1979); *Paxton v. Weaver*, 553 F. 2d. 936 (5th Cir. 1977).

"A defendant's right to remove an action against it from state to federal court 'is purely statutory and therefore its scope and the terms of its availability are entirely dependent on the will

of Congress.'" *Global Satellite Commc'n Co. v. Starmill U.K. Ltd.*, 378 F.3d 1269, 1271 (11th Cir. 2004) (quoting 14B Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure, § 3721, at 285-86 (3d ed. 1998)). **<u>Removal statutes are strictly construed, with all doubts resolved in favor of remand</u>**. *See Miedema*, 450 F.3d at 1328-29 (*citing Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994) ("[R]emoval statutes are construed narrowly; where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand.")).

"A removing defendant bears the burden of proving proper federal jurisdiction." *Leonard v. Enterprise Rent a Car*, 279 F.3d 967, 972 (11th Cir. 2002); *Evans v. Walter Industries, Inc.*, 449 F.3d 1159 (11th Cir. 2001). Moreover, "[w]here, as here, the plaintiff has not pled a specific amount of damages, the removing defendant must provide **<u>by a preponderance of the evidence</u>**" that the amount in controversy exceeds the jurisdiction requirement." *Miedema*, 450 F.3d at 1330, *citing Williams v. Best Buy Co., Inc.*, 269 F. 3d. 1316, 1319 (11th Cir. 2001) (emphasis added). Where there is **<u>any</u>** doubt concerning the jurisdiction of the federal court on removal, the case should be remanded. *Woods v. Firestone*, 560 F. Supp. 588 (S.D. Fla. 1983). Jurisdiction should be retained **<u>only where jurisdiction is clear</u>**. *Id.*

The general removal statute, 28 U.S.C. § 1441, provides that, with limited exceptions, a defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction . . . . " Federal courts have subject-matter jurisdiction only when diversity of citizenship exists between the parties or the controversy involves a question of federal law. See 28 U.S.C. §§ 1331- 1332. The instant case does not involve a question of federal law. Accordingly, this Court may hear the case **<u>only if there is diversity jurisdiction</u>**. Diversity

jurisdiction is found when the suit is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332; *see also Palmer v. Hosp. Auth.*, 22 F.3d 1559, 1564 (11th Cir. 1994) (diversity jurisdiction requires complete diversity); *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 158 (6th Cir. 1993) ("[O]ne means by which Congress has sought to limit access to federal courts in diversity cases is the amount-in-controversy requirement.").

## ARGUMENT

### I. HARTFORD HAS NOT MET ITS BURDEN OF ESTABLISHING THAT THE STATE COURT LITIGATION COMPLAINT SEEKS DAMAGES IN EXCESS OF THIS COURT'S JURISDICTIONAL LIMITS

The Eleventh Circuit has held that the propriety of removal must be assessed on the basis of the removing documents. *Lowrey*, 483 F.3d at 1211. Importantly, in analyzing removal where damages are unspecified, the removing party bears the burden of establishing the jurisdictional amount by a preponderance of the evidence. *Id*. at 1209-11.

The court examines whether it is facially apparent from the complaint that the amount exceeds the jurisdictional requirement. Where the jurisdictional amount is not facially apparent from the complaint, the court may look to the notice of removal. *Id*. at 1213-14. ***If the jurisdictional amount is nether stated clearly on the face of these documents, nor readily deductible from them, the court must remand***. *Id*, at 1211; *Miedema*, 450 F.3d at 1330.

Moreover, "[i]f the scant facts set forth in the petition, combined with a prayer for relief for certain contingencies of damages (prayed for in almost every personal injury case of any magnitude) were deemed adequate to allow federal diversity jurisdiction, there would be very few slip and fall, car accident, or other personal injury cases that would not meet the amount in

controversy requirement. Congress's imposition of a $75,000.00 threshold for removal of such cases would be eviscerated." *McAndrew v. Nolen*, 2009 WL 259735, at *4. "***In any event, removal cannot be based upon mere conclusory allegations of the removing party's attorney***." *Allen v. R&H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995) (emphasis added).

The Notice of Removal states in a conclusory fashion that the Menada's "complaint, on its face, establishes that the amount in controversy has been met" by virtue of the Civil Remedy Notice attached to the Complaint. Notice of Removal, at p. 6. Stated simply, this is not enough for HSB to carry its burden – by a preponderance of the evidence – that the amount in controversy threshold has been met.

The law of the Eleventh Circuit is clear: "a conclusory allegation in the notice of removal that the jurisdictional amount is satisfied, without setting forth the underlying facts supporting such an assertion, is insufficient to meet the defendant's burden." *Best Buy Co., Inc.*, 269 F.3d at 1319-1320. Moreover, with respect to satisfying the burden of proving the amount in controversy for purposes of diversity jurisdiction, removal is justified if:

> …from the face of the pleadings, it is apparent, to a legal certainty, that the [movant] cannot recover the amount claimed.' The district court also property denied appellant's motions to amend and for reconsideration because the proposed complaint is backed only by purely speculative or unsupported allegations of injury, which do not satisfy appellant's burden of establishing that the amount in controversy exceeds the statutory maximum of $75,000.

*Rosenboro v. Kim*, 994 F.2d 12, 19 (D.C. Cir. 1993). Similarly, here Hartford has failed to show that the Complaint, its attachments, or any other documents upon which it purports to rely in the Notice of Removal, alleges anything that remotely concerns the $75,000.00 threshold. To be sure, Hartford relies principally on the Civil Remedy Notice (**"CRN"**) that Menada filed in connection

with its claims under the Policy, and states "Menada provided a line item breakdown of its alleged incurred expenses, which are the crux of the issues in this suit. Menada alleges entitlement to a total of $291,991.06, after accounting for its $10,000 deductible." See Notice of Removal at ¶ 7.

Florida's Civil Remedy Statute (**"CRS"**) provides the mechanism to commence a first-party unfair claim settlement practices bad faith action. *See* Fla. Stat. § 624.155. As a condition precedent to filing the claim, an insured must provide its insurer and the Florida Department of Insurance with a CRN. *See* Fla. Stat. § 624.155(3)(a)-(f). The CRN serves as a 60-day written notice of the insurer's (alleged) violation(s) of the unfair claim settlement practices found in Fla. Stat. § 626.9541(1)(i).

Specifically, Section 624.155, Florida Statutes, provides, in pertinent part, as follows:

> 624.155. Civil remedy
> ....
> (3)(a) As a condition precedent to bringing an action under this section, the department and the authorized insurer must have been given 60 days' written notice of the violation. If the department returns a notice for lack of specificity, the 60–day time period shall notbegin until a proper notice is filed.
>
> (b) The notice shall be on a form provided by the department and shall state with specificity the following information, and such other information as the department may require:
>
> 1. The statutory provision, including the specific language of the statute, which the authorized insurer allegedly violated.
> 2. The facts and circumstances giving rise to the violation.
> 3. The name of any individual involved in the violation.

*Id.* Notably, "on its face, ***the statute does not require a specific cure amount***. We are hesitant to impose a requirement beyond that directed by the legislature." *Hunt v. State Farm Florida Ins. Co.*, 112 So.3d 547, 550 (Fla. 2d DCA 2013).

In *Vest v. Travelers Ins. Co.,* 753 So.2d 1270, 1276 (Fla.2000), the Supreme Court stated that the insured may submit a CRN before liability or damages have been determined; the insurer's appropriate response to the CRN is not dependent on such a determination. *Id*. at 1275. Rather the insurer must make a "good-faith evaluation of what is owed ... based upon proof of loss required by the policy and [the insurer's] expertise in advance of a determination by a court or arbitration." *Id*. at 1275-76. The court further explained that "[w]hat is owed on the contract is in turn governed by whether all conditions precedent for payment contained within the policy have been met." *Id.* at 1275.

Menada also respectfully urges this Court to recognize and consider the holdings of several federal court decisions that Section 624.155(3)(b) **_does not require the CRN to allege a specific cure amount_**. *See, e.g., King v. Gov't Emps. Ins. Co.,* No. 8:10–cv–977–T–30AEP, 2012 WL 4052271, at *7 (M.D. Fla. Sept. 13, 2012) (*citing Bullard Bldg. Condo. Ass'n v. Travelers Prop. Cas. Co. of Am.,* No. 8:08–cv–50–T–30MAP, 2009 WL 2423436, at *10 (M.D. Fla. Aug. 4, 2009); *Tropical Paradise Resorts, LLC v. Clarendon Am. Ins. Co.,* No. 08–60254–CIV, 2008 WL 3889577, at *3 (S.D. Fla. August 20, 2008).

Thus, a CRN is not required by law to allege a specific cure amount, and anything with respect to same set forth in a CRN should not be considered as anything more than a notice to an insurer, pursuant Section 624.155, of the specific actions that the insurer can or could take to cure the issues giving rise to the CRN. Stated differently, because a CRN is not required to state a sum certain for cure or other purposes, anything set forth in a CRN should not be considered as anything other than notice to an insurer of a potential claim and the nature and bases giving rise to same. A CRN is nothing more than a speculative claim and, without more, cannot be considered in

determining the amount in controversy for purposes of diversity jurisdiction.

Finally, Menada notes that its CRN states that:

> …should HSB not be in agreement with Menada's reasonable demand for payment of its rightfully owned insurance benefits being submitted at this time, Menada is still willing to consider and potentially accept a reasonable counter-offer made by HSB.  As such, Menada hereby requests that HSB now make a reasonable counter-offer before the expiration of the cure period.  Menada hopes still hopes that its claim can be resolved amicably.

CRN at p. 9.  The foregoing must be considered in light of the fact that "where there is **_any_** doubt concerning the jurisdiction of the federal court on removal, the case should be remanded. *Woods*, 560 F. Supp. at 588, and that jurisdiction should be retained **_only where jurisdiction is clear_**.  *Id.*  Here, the questions outweigh any certainties by tenfold as they relate to the amount in controversy.  Accordingly, this Court should immediately remand the case.

In addition to not carrying its burden with respect to the amount in controversy, Hartford's Notice of Removal suffers from other fatal defects relating to diversity jurisdiction.  It is black-letter law that when a challenge to jurisdiction is factual, **_the court is not bound by the allegations in the pleadings_**.  *Id.*  Therefore, "**_no presumptive truthfulness attaches to plaintiff's allegations_**" **_for factual challenges_**.  *Id.*  Regardless of whether the challenge is facial or factual, the movant bears the burden of persuasion.  *Id.*  **_Removal is proper where the federal claim is "made solely for the purpose of obtaining jurisdiction"_** or where such a claim is "wholly insubstantial and frivolous." *Kulick v. Pocono Downs Racing Ass'n, Inc.*, 816 F.2d 895, 898 (3d Cir. 1987) (*citing Bell v. Hood*, 237 U.S. 678, 682-83 (1946)).

This Court recently recognized these principles in *Dibble v. Avrich*, Case No. 14-civ-61264 as follows:

> …in merely stating that the Court has subject matter jurisdiction over

Plaintiff's claims pursuant to 28 U.S.C. § 1332(a)(1) because the matter in controversy exceeds to sum or value of $75,000," Plaintiff did not sufficiently plead the amount-in-controversy required for diversity jurisdiction.

\*\*\*

Federal courts are courts of limited jurisdiction. In order to invoke a federal court's diversity jurisdiction, a plaintiff must claim, among other things, that the amount-in-controversy exceeds $75,000." Typically, dismissal for failure to meet the amount-in-controversy requirement is appropriate. … where the pleadings make it clear to a legal certainty that the claim is really for less than the jurisdictional amount … However, where jurisdiction is based on a claim for indeterminate damages, the [] 'legal certainty' test gives way, and the party seeking to invoke federal jurisdiction bears the burden of proving by a preponderance of the evidence that the claim on which it is basing jurisdiction meets the jurisdictional minimum."

*Dibble v. Avrich*, 2014 WL 5305468 at \*5 (S.D. Fla. Oct. 15, 2014) (quoting *Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 (11th Cir. 2003). This comports with the Eleventh Circuit's instruction in the much stricter but parallel context of removal jurisdiction that "[a] conclusory allegation in the notice of removal that the jurisdictional amount is satisfied, without setting forth the underlying facts supporting such an assertion, is insufficient to meet the defendant's burden." *Leonard v. Enter. Rent a Car*, 279 F.3d 967, 972 (11th Cir. 2002).

### A.   On its Face, the Complaint Does Not Allege Damages to Establish the Requisite Amount in Controversy and Must be Remanded

On its face, the Complaint does not, "by a preponderance of the evidence that the claim on which it is basing jurisdiction, meet[ ] the jurisdictional minimum." *Federated Mut. Ins. Co.*, 329 F.3d at 807. To be sure, ***the Complaint does not state nor purport to state any quantifiable amount of damages***. And the Notice of Removal is nothing more than an attempt to shoehorn in a case involving issues of purely state law into federal court by speculating what damages Menada could possibly or assert in this case. Such conjectural and tactical pleading on the part of Hartford

simply does not "bear the burden of establishing the amount in controversy." *Rosenboro*, 994 F.3d at 17. As noted above, this is clearly not what Congress contemplated when promulgating the diversity subject matter jurisdiction statute.

### B.   Factually, the Notice of Removal Fails to Satisfy the Burden of Proving that Menada's Claims Meet the Jurisdictional Minimum

As noted above, when a challenge to jurisdiction is factual, <u>*the court is not bound by the allegations in the pleadings, and no presumptive truthfulness attaches to plaintiff's allegations" for factual challenges.*</u> Moreover, removal is proper where the federal claim is "made solely for the purpose of obtaining jurisdiction" or where such a claim is "wholly insubstantial and frivolous." *Bell v. Hood*, 237 U.S. at 682-83.

As has been discussed herein, in some cases, a complaint may be dismissed for failing to meet the $75,000 threshold if it is clear to a "legal certainty" that the claim is really for less than the jurisdictional amount. *Federated Mut. Ins. Co.*, 329 F.3d at 807 (11th Cir. 2003). *See also Bradley v. Kelly Services, Inc.*, 224 Fed. Appx. 893, 895 (11th Cir. 2007). And while Menada echoes its sentiment as set forth above that the Notice of Removal and the attachments thereto do not – to a legal certainty – satisfy the jurisdictional threshold, it cannot be overlooked that:

> where jurisdiction is based on a claim for indeterminate damages, the . . . 'legal certainty' test gives way, and the party seeking to invoke federal jurisdiction bears the burden of proving by a preponderance of the evidence that the claim on which it is basing jurisdiction meets the jurisdictional minimum. A conclusory allegation ... that the jurisdictional amount is satisfied, without setting forth the underlying facts supporting such an assertion, is insufficient to meet the [movant's] burden." . . .

*Bradley*, 224 Fed. Appx. at 895; *See also Federated Mut. Ins.*, 329 F.3d at 809 (noting that a party's mere speculation that the amount in controversy met the jurisdictional threshold did not satisfy its burden of proving beyond a preponderance of the evidence the claim at issue exceeded $75,000).

Based on these authorities, Menada's Complaint has made "a claim for indeterminate damages," such that the "'legal certainty' test gives way, and the party seeking to invoke federal jurisdiction – Hartford – bears the burden of proving by a preponderance of the evidence that the claim on which it is basing jurisdiction meets the jurisdictional minimum.

The Court "will permit the use of 'deduction, inference, or other extrapolation of the amount in controversy' and 'may consider facts alleged in the notice of removal, judicial admissions made by the plaintiffs, non-sworn letters submitted to the court, or other summary judgment type evidence that may reveal that the amount in controversy requirement is satisfied.'" *Id*. (citation omitted).  Under this standard, Hartford cannot carry its burden by making the unsworn representation that "[Menada's] detailed and line-item CRN alleges entitlement to $291,991.06." Notice of Removal at ¶ 14.

At the risk of belaboring the point, it strains credulity to assert that a court has jurisdiction based on nothing more than a whim of an overzealous defendant who solely wants to forum shop and merely speculates or anticipates that a plaintiff has, or may assert a claim exceeding $75,000, so as to satisfy the jurisdictional threshold.  *Accord Horton v. Liberty Mutual Ins. Co.*, 367 U.S. 348. 358 (1961) ("The application of the foregoing rules to the problem here results in a simple solution. At the time respondent filed its complaint, there was enforceable against it a liability in the amount of $1,050. If petitioner defaulted, the District Court would set aside the Board award. If respondent lost and petitioner filed no counterclaim, the judgment could only be for $1,050. ***It was only if petitioner counterclaimed for an amount in excess of the jurisdictional amount of $10,000, that respondent could have controverted a claim cognizable in federal court. It seems impossible to avoid the conclusion that the Court is allowing diversity jurisdiction to be***

*predicated upon a counterclaim which might possibly be filed by petitioner*)." (emphasis added).

Notably, the *Horton* Court went on to note:

> That the Declaratory Judgments Act in no way affects the jurisdictional requirements for federal courts is clear. To sanction suits for declaratory relief as within the jurisdiction of the District Courts *merely because … artful pleading anticipates a defense based on federal law would contravene the whole trend of jurisdictional legislation by Congress, disregard the effective functioning of the federal judicial system and distort the limited procedural purpose of the Declaratory Judgment Act*.

*Id*. at 360. For these reasons alone, Hartford has failed to bring forward sufficient evidence to carry its burden of proving that removal was proper. In the papers submitted to support removal in this matter, Hartford has done nothing more that plead conclusory allegations with respect to the amount of Menada's claims. Accordingly, Hartford has not, by a preponderance of the evidence, proven to this Court that the amount in controversy in this matter exceeds $75,000.00 and this case must be remanded.

## CONCLUSION

The Eleventh Circuit imposes a heavy burden upon a party seeking to remove a case to federal court based on alleged diversity jurisdiction. Hartford has flatly failed to meet its burden. Hartford's attempt to create jurisdiction in this Court where none exists should be summarily rejected and immediate remand is appropriate and warranted.

**WHEREFORE**, Menada respectfully request that the Court enter an Order (i) immediately remanding the case back to the Circuit Court for the 11th Judicial Circuit in and for Miami-Dade County, Florida; (ii) entering an award of attorney's fees and costs; and (iii) for such other relief as the Court deems just and proper.

Dated: June 30, 2017                              Respectfully submitted,

                                                MARTINEZ MORALES
                                                2600 S. Douglas Road, Suite 305
                                                Coral Gables, FL 33134
                                                T: 305-501-5011
                                                F: 786-272-7997
                                                rmorales@mmlawfl.com
                                                ahonaker@mmlawfl.com


                                       By:  /s/Aaron P. Honaker
                                                **RAUL MORALES**
                                                **FBN: 0653071**
                                                **AARON P. HONAKER**
                                                **FBN: 48749**

The Hartford Steam Boiler Inspection and Insurance Co. v. Menada, Inc.<br>
Motion for Remand<br>
Case No. 1:17-cv-21465

# CERTIFICATE OF SERVICE

**WE HEREBY CERTIFY** that on this 30th day of June, 2017, a true and correct copy of the foregoing has been furnished via electronic mail upon:

> Rory Eric Jurman, Esq.
> Jesse D. Drawas, Esq.
> **Fowler White Burnett, P.A.**
> One Financial Plaza, Suite 2100
> 100 Southeast Third Avenue
> Fort Lauderdale, Florida 33394
> rjurman@fowler-white.com
> jdrawaw@fowler-white.com

By: /s/Aaron P. Honaker
    **RAUL MORALES**
    **AARON P. HONAKER**